IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN FLEMING et al.<br>   *Plaintiffs* | :<br>:<br>: |
| v. | :  CIVIL NO. 23-2558 |
| MINNESOTA LIFE INSURANCE CO et al.<br>   *Defendants* | :<br>:<br>: |

### MEMORANDUM OF LAW

Plaintiffs, Kevin Fleming, Rebekah Fleming, Ryan Fleming and Cynthia A. Henry, as personal representative of the Estate of Robert DiNicola (deceased) (collectively "Plaintiffs"), brought several claims against Minnesota Life Insurance Company ("Minnesota Life"), Securian Financial Company, Securian Financial Group, Inc., Securian Life Insurance Company, Vanguard Group, Inc. and Vanguard Group, Inc. Group Benefit Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), breach of contract, breach of fiduciary duty, equitable estoppel, unfair trade practices and unfair insurance practices, and statutory bad faith. ECF No. 1 [hereinafter "Compl."]. For the following reasons, Counts One, Two, Three, and Six are dismissed with prejudice. Counts Four and Five survive a motion to dismiss. Plaintiffs' motion to amend Counts Seven and Eight is granted.

### I. FACTUAL BACKGROUND

The disputes in this matter arise out of a life insurance policy. Kim DiNicola was employed at Vanguard for 21 years, and during her employment she maintained a life insurance policy. Compl. ¶ 19. She enrolled in $368,000 in group basic life insurance and $1,288,000 in group supplemental life insurance (collectively "Group Policy" in the amount of $1,656,000). *Id.* ¶ 20. The Group Policy was offered through Kim's employer, Vanguard, but provided by

1

Minnesota Life. *Id.* ¶ 21. Plaintiffs were named as the beneficiaries under the Group Policy.[1] *Id.* ¶ 22.

In early 2019, Kim became disabled due to colorectal cancer, and she obtained disability status under the policy on July 2, 2019. *Id.* ¶¶ 24-25. As a result of Kim's disability status, the Group Policy would remain in effect without payment of premiums for the next two years or until Kim's recovery if prior to that time. *Id.* On January 7, 2020, Minnesota Life sent Kim a Conversion Application to convert her Group Policy into an Individual Policy, though it is unclear why Minnesota Life issued the Conversion Application.[2] *Id.* ¶ 26. Nonetheless, Kim completed the Conversion Application and paid the premium for the Individual Policy providing coverage for $100,000. *Id.*

On January 22, 2020, Kim resigned from Vanguard due to her medical condition. *Id.* ¶ 19. Under the Group Policy's terms, coverage is only available to employees "actively at work" or to certain retirement classes. *See* ECF No. 9-2 at 4 (Group Policy) ("Except as otherwise provided for in this certificate, you are eligible to continue to be insured only while you remain actively at work."). After Kim's resignation and a few months after she completed the Conversion Application, Minnesota Life sent Kim a letter on April 27, 2020 confirming issuance of the Individual Policy. *Id.* ¶ 27.

However, almost a year later, Minnesota Life had numerous communications with Kim indicating that the Group Policy was in effect. On April 16, 2021, a Minnesota Life agent working on Kim's case logged a general entry stating, "[t]his is duplicate coverage as Waiver of

---

[1] Robert DiNicola, a named beneficiary and now deceased, appeared through Cynthia A. Henry, the personal representative of his estate. Compl. ¶ 22.
[2] Minnesota Life claimed it was Kim that "reached out to the company to convert." ECF No. 44 at 31 [hereinafter "Hearing Transcript"]. At the motion to dismiss stage, though, Plaintiffs' factual allegations will be taken as true.

2

Premium disapproved, so sent email requesting converted coverage to be rescinded." ECF No. 14-1 at 42; Compl. ¶ 29. A few days later on April 23, 2021, Minnesota Life sent Kim a letter stating that her Individual Policy was rescinded, the total premium payments were refunded, and coverage under the Group Policy would continue. *Id.* ¶ 28. About a week later, on April 29, 2021, Kim called Minnesota Life to make a premium payment for the Group Policy, but the agent advised her that she had a Waiver of Premium in effect. *Id.* ¶ 30; ECF No. 14-1 at 50. That same day, Minnesota Life issued a written letter to Kim advising her of the same. Compl. ¶ 31.

Minnesota Life's communications indicating continued Group Policy coverage persisted. On June 1, 2021, Minnesota Life sent Kim a letter requesting proof of continuous disability and a physician statement. Kim complied, and Minnesota Life confirmed continued coverage under the Group Policy. *Id.* ¶¶ 32-33. On July 2, 2021, a Minnesota Life agent called Kim and, once again, communicated that the insurer had made a mistake previously and the Group Policy remained in effect. *Id.* ¶ 34; ECF No. 14-1 at 61.

Kim later died of colorectal cancer on October 18, 2021. Compl. ¶ 36. Roughly a month after Kim's death, Minnesota Life denied Plaintiffs' claim for the Group Policy's death benefit, claiming that she only had coverage under the Individual Policy. *Id.* ¶ 46. Minnesota Life denied coverage on the basis that Kim lost eligibility to participate in the Group Policy when she resigned on January 22, 2020. ECF No. 9 at 6-10 [hereinafter "Minnesota Life Mot."]. Minnesota Life characterized its communications with Kim regarding the Group Policy as "clerical errors," which cannot result in the continuance of coverage under the Group Policy's terms. *Id.* at 10-11. Due to an error in Kim's file, her record failed to show that she no longer worked with Vanguard. Hearing Transcript at 29.

In the time leading up to her death, Plaintiffs alleged in their Complaint that Kim told her family that the Group Policy was still in effect. *Id.* ¶ 35. In reliance on that information, Plaintiffs made certain financial decisions, such as moving to Florida and selling Kim's house. *Id.* ¶¶ 36-45. Consequently, Plaintiffs sued Defendants.

Counts One through Five of the Complaint are against Minnesota Life and the Securian Defendants: Count One seeks declaratory relief; Count Two seeks recovery of insurance benefits; Count Three alleges breach of contract; Count Four alleges breach of fiduciary duties under ERISA; and Count Five alleges equitable estoppel under ERISA. Compl. ¶¶ 59-96. Counts Six through Eight are against the Vanguard Defendants: Count Six alleges breach of plan; Count Seven alleges breach of fiduciary duties under ERISA; and Count Eight alleges equitable estoppel under ERISA. *Id.* ¶¶ 97-126. Counts Nine and Ten—alleging violations of the Pennsylvania Unfair Trade Practice and Consumer Law and the Unfair Insurance Practices, and bad faith under 42 Pa. C.S.A. Section 8371, respectively—are against all Defendants. *Id.* ¶¶ 127-48.

Defendants Minnesota Life, Securian Financial Company, Securian Financial Group, Inc., and Securian Life Insurance Company filed a motion to dismiss against Plaintiffs. ECF No. 9. After the motion was fied, Plaintiffs stipulated to the dismissal of Securian Financial Company, Securian Financial Group, Inc., and Securian Life Insurance Company from this case. ECF No. 26. In addition, Defendants Vanguard Group, Inc. and Vanguard Group, Inc. Group Benefit Plan (together "Vanguard") filed a motion to dismiss against Plaintiffs. ECF No. 11 [hereinafter "Vanguard Mot."]. This opinion resolves these motions.

## II.     LEGAL STANDARDS

### a. Rule 12(b)(6) Motion to Dismiss.

A defendant may move to dismiss a lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court accepts Plaintiffs' allegations in their Complaint and makes reasonable inferences based on the facts, in the light most favorable to Plaintiffs. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). This Court need not accept legal conclusions and conclusory statements in Plaintiffs' Complaint. *Id.*

### b. Rule 12(d) Conversion to Motion for Summary Judgment.

Plaintiffs request that this Court convert, under Rule 12(d), Defendants' motions to dismiss into motions for summary judgment. ECF No. 14 at 10-13 [hereinafter "Pls.' Resp. Minnesota Life"]; FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). However, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). The Third Circuit has not articulated a test to determine when a document is "integral" to a complaint, but it has permitted courts to consider extraneous documents if claims

asserted in the complaint depend on the document's contents. *Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761 at *2 (3d Cir. Dec. 7, 2023).

Here, Minnesota Life[3] attached in its motion to dismiss the (i) Complaint, (ii) Employee Group Term Life Certificate of Insurance, (iii) Remittance Sheet, (iv) Conversion Enrollment Form, (v) Letter confirming policy conversion, (vi) Individual Policy, and (vii) Group Policy. ECF No. 9. The Employee Group Term Life Certificate of Insurance is the only document not explicitly referenced in the Complaint. The certificate summarizes the principal provisions of the Group Policy and, functionally, provides no different or added information to the Group Policy (which is certainly referenced in the Complaint). Because the certificate merely duplicates certain parts of the Group Policy via summary, the Court need not convert Defendants' motions to dismiss into motions for summary judgment under Rule 12(d). The applicable standard for Defendants' motions is Rule 12(b)(6).

## III. DISCUSSION

Counts One through Five are against Minnesota Life; Counts Six through Eight are against Vanguard. Plaintiffs voluntarily dismissed Counts Nine and Ten. Pls.' Resp. Minnesota Life at 2. For the reasons below, Counts One, Two, Three, and Six are dismissed with prejudice. Counts Four and Five survive a motion to dismiss. Plaintiffs' motion to amend is granted with respect to Counts Seven and Eight.

---

[3] Vanguard incorporated the facts from Minnesota Life's motion to dismiss into its own motion, which includes all of Minnesota Life's attached exhibits. Vanguard Mot. at 3. Therefore, the conversion request applies against Vanguard too.

### a. **Counts Against Minnesota Life.**

#### i. *Counts One and Three Preempted.*

"ERISA possesses extraordinary pre-emptive power." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (internal quotations omitted). By affording ERISA such preemptive powers, Congress intended to "promote uniform administration of benefit plans." *Id.* Two types of preemption are relevant in this case: express preemption and conflict preemption.

ERISA's express preemption provision provides that ERISA's regulatory structure "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA]." 29 U.S.C. § 1144(a). The words "relate to" have broad meaning and encompass anything that has a "connection with or reference to such a plan." *Menkes*, 762 F.3d at 294. Moreover, the words "State laws" are not limited to laws only designed to affect employee benefit plans. *Id.* In fact, state common law claims are routinely excluded under Section 1144. *Id.* Plaintiffs alleged in Count Three that Minnesota Life breached its contract by failing to pay the Group Policy benefit. Compl. ¶¶ 72-74. Count Three is a state common law claim, and an alleged breach of the Group Policy certainly "relates to" an employee benefit plan subject to ERISA. Therefore, Count Three is dismissed as expressly preempted by ERISA.

In addition to express preemption, ERISA preempts State laws that conflict with its jurisdiction. Conflict preemption applies when a State claim "duplicates, supplements, or supplants the ERISA civil enforcement remedy" under 29 U.S.C. Section 1132. *Menkes*, 762 F.3d at 294 (barring any claim that "provides a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA."). Count One is conflict preempted because 29 U.S.C. Section 1132(a)(1)(B) already permits litigants to seek declaratory judgment under

7

ERISA. Because Plaintiffs cannot pursue additional judicial remedies already provided by ERISA, Count One is conflict preempted and dismissed.

### ii. Count Two is Dismissed.

ERISA permits a civil cause of action "to recover benefits due to [plaintiff] under the terms of his plan . . .". 29 U.S.C. § 1132(a)(1)(B). Given that Minnesota Life is vested with discretionary authority as the "Claims Fiduciary" to construe the terms of a life insurance plan or to determine benefit eligibility, its decision to deny coverage under the terms of the Group Policy is subject to an arbitrary and capricious standard of review. ECF No. 9-5 at 7-9; *McCann v. Unum Provident*, 907 F.3d 130, 147 (3d Cir. 2018). The "written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995). Here, the Group Policy's language unambiguously ceases coverage upon retirement. Group Policy at 4. When Kim resigned from Vanguard on January 22, 2020, her coverage under the Group Policy ceased, and it was not arbitrary and capricious for Minnesota Life to deny a claim based on the Group Policy's express language. In any event, Plaintiffs do not argue that the Group Policy's language is ambiguous, and they instead focus their briefing on the ERISA breach of fiduciary duty and equitable estoppel arguments. Therefore, Count Two is dismissed.

### iii. Count Four Survives Minnesota Life's Motion to Dismiss.

Although Plaintiffs cannot survive a motion to dismiss based on the express terms of the Group Policy, Plaintiffs' extra-contractual claims do survive given Minnesota Life's significant and continuous communications indicating valid coverage under the Group Policy.

In Count Four, Plaintiffs allege that Minnesota Life breached its fiduciary duty under ERISA. "To establish a breach of fiduciary duty under ERISA, the plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009); 29 U.S.C. §§ 1104, 1109.

Taking the elements in order, Minnesota Life was certainly acting as a fiduciary when its agents communicated to Kim numerous times between April 16, 2021 to July 2, 2021 that she was still covered by the Group Policy. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000) ("A plan administrator . . . acts as a fiduciary when explaining plan benefits and business decisions about plan benefits . . . .")

Second, Minnesota Life's numerous representations, as an objective matter, would have been confusing to any insured. A statement is an affirmative misrepresentation if a "fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused by the statement or omission." *In re Unisys Corp.*, 579 F.3d at 229. It was Minnesota Life that affirmatively told Kim her Individual Policy was duplicate coverage to her Group Policy, and that her Individual Policy would be rescinded and her premium payments refunded. Compl. ¶¶ 28-29. For several months after that, Minnesota Life continued to communicate with Kim as if her Group Policy was still valid. It sent her multiple letters and had multiple phone calls with her about coverage, waiver of premiums, and proof of continuous disability. *Id.* ¶¶ 29-34. Far from apathy, Kim did her diligence and received numerous reassurances from Minnesota Life that she still held the Group Policy.

Third, Minnesota Life's representations to Kim would plausibly mislead a reasonable employee in making an adequately informed retirement decision. *In re Unisys Corp.*, 579 F.3d at 228 (A statement is material if there is a "substantial likelihood that [the representation] would mislead a reasonable employee in making an adequately informed retirement decision."). Minnesota Life argued that Kim's reliance on its representations was not reasonable given the Group Policy's express language of ceasing coverage upon retirement. Minnesota Life Mot. at 23. Minnesota Life cited *In re Unisys*, where the Court rejected an ERISA estoppel claim for lack of reasonable reliance because the plaintiffs "relied to their detriment on their interpretation of the summary plan descriptions as promising vested or lifetime benefits," despite the contradictory "unqualified reservation of rights clauses in the plans." *In re Unisys*, 58 F.3d at 907. But unlike *In re Unisys*, where the plaintiffs unreasonably relied on their own interpretation of a portion of a plan document despite another clause in the plan document unambiguously contradicting their interpretation, here, Kim relied on Minnesota Life's numerous communications and assurances made over several months that she had coverage under the Group Policy after she resigned from Vanguard. Therefore, given Minnesota Life's continuous, months long confirmations that Kim remained an insured under the Group Policy, Plaintiffs have plausibly demonstrated that Kim's reliance on Minnesota Life's misrepresentations was reasonable.

In addition, Minnesota Life separately argued that the misrepresentations were not material because they did not prevent her from making an adequately informed retirement decision. Minnesota Life noted that Kim's Group Policy coverage ceased as soon as she resigned on January 22, 2020, and the post-resignation misrepresentations from April 2021-July 2021 had nothing to do with Kim losing the Group Policy. ECF No. 16 at 6-8 [hereinafter

"Minnesota Life Reply"]. Yet, since the time of Minnesota Life's misrepresentations beginning in April 2021, Kim may have refrained from making other retirement decisions unrelated to the Group Policy—such as finding employment elsewhere to enroll in a different employee-sponsored life insurance policy or seeking supplemental insurance. *See Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994) ("we conclude that the [plaintiffs] have suffered an injury in giving up an opportunity to accommodate their insurance needs through an independent insurance carrier because of their reasonable reliance on [employer's] [mis]representations."). On the other hand, Minnesota Life argued that Kim could not have received alternative coverage in 2021 given her medical condition, and cited *Smith v. Hartford Ins. Group* for the proposition that a plaintiff's conclusory allegation that they could have obtained alternative coverage, without more, was insufficient to withstand summary judgment. 6 F.3d 131, 137 (3d Cir. 1993); Minnesota Life Reply at 5; Hearing Transcript at 32, 43. However, *Smith* was decided on a motion for summary judgment, a different posture than present here. At the motion to dismiss phase, discovery has not yet born out whether it would have been achievable for Kim to pursue alternative policies or other retirement options after her resignation and Minnesota Life's misrepresentations. This is an issue better suited for disposition after discovery, not at the motion to dismiss phase.

Last, Kim detrimentally relied on Minnesota Life's misrepresentations in making a retirement decision. Detrimental reliance may include "decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." *In re Unisys Corp.*, 579 F.3d. at 229. As discussed above, Kim did detrimentally rely on Minnesota Life's misrepresentations. As a result of Kim's reliance, she communicated to Plaintiffs before she died that the Group Policy was still

in effect. Plaintiffs consequently made several financial decisions in reliance on that information. Compl. ¶¶ 35-45; *Curcio*, 33 F.3d at 237 (finding that the beneficiary plaintiff and the insured decedent gave up opportunities to accommodate their insurance needs in detrimental reliance on the employer's misrepresentations).

Nonetheless, despite the legal elements, Minnesota Life seemed to argue that Plaintiffs cannot recover under the Group Policy because ERISA only permits the beneficiaries to recover under the Individual Policy that was actually in effect.[4] Hearing Transcript at 33, 35. However, equitable relief beyond the specified plan terms can be ordered. *In re Unisys*, 579 F.3d at 237 (holding that for breach of fiduciary duty and equitable estoppel claims, plaintiffs may be "entitled to receive relief beyond the benefits specified in the plan") (internal quotations omitted).

Therefore, Count Four plausibly states a claim for ERISA breach of fiduciary duty and survives Minnesota Life's motion to dismiss.

### iv. *Count Five Survives Minnesota Life's Motion to Dismiss.*

Like Count Four, Count Five also survives the motion to dismiss. In Count Five, Plaintiffs allege an ERISA equitable estoppel claim against Minnesota Life. An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a (1) material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances. *Smith*, 6 F.3d at 137; 29 U.S.C. § 1132(a)(3). These elements overlap considerably with an ERISA breach of fiduciary duty claim, and where they do overlap,

---

[4] Minnesota Life maintained that this same argument applies to Count Five equitable estoppel. Hearing Transcript at 33. For the same reasons as stated here, this argument is rejected under *In re Unisys*.

Minnesota life asserted its same arguments for equitable estoppel as it did for breach of fiduciary duty. Minnesota Life Reply at 6.

A representation is material if there is a "substantial likelihood that it would mislead a reasonable employee" in making an adequately informed decision about their benefits. *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 76 (3d Cir. 2001). Here, Minnesota Life's representations did create a substantial likelihood that would objectively mislead Kim. *See* discussion *supra* Section III.a.iii. Second, Kim did reasonably and detrimentally rely on Minnesota Life's misrepresentations. *Id.*

However, different than an ERISA claim for breach of fiduciary duty, Plaintiffs must establish "extraordinary circumstances" in an ERISA equitable estoppel claim. "Extraordinary circumstances can arise where there are affirmative acts of fraud, where there is a network of misrepresentations . . . over an extended course of dealing, or where particular plaintiffs are especially vulnerable." *Pell*, 539 F.3d at 303-04 (internal quotations omitted). Minnesota Life argued an absence of extraordinary circumstances because its communications with Kim were a mere "error." Minnesota Life Reply at 4. Continuous representations confirming Kim's coverage under the Group Policy, however, is not a mere single error. From April 16, 2021 to July 2, 2021, Minnesota Life affirmatively communicated to Kim numerous times that coverage under the Group Policy was valid and repeatedly insisted that her Individual Policy coverage was a mistake. Minnesota Life's agents sent Kim multiple letters and had multiple phone calls with her about Group Policy coverage, waiver of premiums, and proof of continuous disability. Compl. ¶¶ 29-34. Therefore, Plaintiffs have adequately demonstrated a network of misrepresentations over an extended course of dealing. *See Smith*, 6 F.3d at 142 (writing that a

fact finder could find extraordinary circumstances because the defendant repeatedly made written and oral assurances that the plaintiff had a specific type of coverage).

Therefore, Count Five plausibly states a claim for ERISA equitable estoppel and survives Minnesota Life's motion to dismiss.

    b. **Counts Against Vanguard.**

        i. *Count Six is Dismissed.*

Plaintiffs alleged that Minnesota Life's failure to pay the Group Policy benefit constitutes a breach of the Group Policy by Vanguard and Kim's employment contract. Compl. ¶ 106; ECF No. 15 at 8 [hereinafter "Pls.' Resp. Vanguard].

First, Minnesota Life's rejection of Plaintiffs' payment claim under the Group Policy cannot be considered a breach by Vanguard. Vanguard is the employer/plan administrator, not the entity responsible for making benefit decisions. In fact, the duty to make benefit decisions is expressly delegated to Minnesota Life. ECF No. 9-5 at 7-9; *see Staropoli v. Metro. Life Ins. Co.*, 465 F. Supp. 3d 501 (E.D. Pa. 2020) (granting motion to dismiss claims against employer/plan administrator for failing to plead that employer made the benefit decisions in question, and where the Plan documents delegated those duties to a third-party insurance company). Plaintiffs themselves conceded that Vanguard was not responsible in any way for the payment of benefits under the Group Policy. Pls.' Resp. Vanguard at 9-10. Therefore, Vanguard cannot be held responsible for Minnesota Life's denial of the Group Policy payment claim.

Second, Plaintiffs contended that Vanguard breached Kim's employment contract but cited to no specific provision in the employment agreement. *Id.* at 8. They seemed to maintain that Vanguard's contractual breach was failing to inform Kim how her working status or illness

14

would impact her coverage under the Group Policy. *Id.* at 9. But by failing to provide any specific contractual provision that was allegedly breached, Plaintiffs have failed to satisfy their breach of contract claim. In any event, any claim arising under the common law of contract and predicated on the Group Policy would be preempted by ERISA.

Plaintiffs also argued, meekly, that because Vanguard could be held liable as a plan administrator for misrepresentations to its employees, its claim should thereby survive a motion to dismiss. *Id.* at 10; Hearing Transcript at 19. But just because Vanguard could, as a matter of law, be held liable as a plan administrator for misrepresentations, that does not mean they plausibly are liable under a breach of employment contract theory. Plaintiffs alleged no specific facts to indicate as much, and such failure is insufficient to withstand the motion to dismiss standard. Therefore, Count Six is dismissed against Vanguard.

### ii. *Plaintiff is Given Leave to Amend Counts Seven and Eight.*

In Counts Seven and Eight, Plaintiffs alleged breach of fiduciary duty and equitable estoppel under ERISA. *See* discussion of legal elements *supra* Sections III.a.iii, III.a.iv. Plaintiffs claimed that Kim was informed by both Minnesota Life and Vanguard that her Group Policy was in full effect. Compl. ¶ 124. Plaintiffs, though, provided no specific factual allegations of Vanguard's misleading communications or assurances that Kim's Group Policy was still in effect. *See* Compl. ¶ 117 (stating vaguely that Vanguard provided incorrect information, misled Kim, and failed to inform that coverage had ended). In contrast, Plaintiffs mustered numerous, specific instances of Minnesota Life's misleading communications with Kim regarding the Group Policy. Plaintiffs protested that they need not put all their evidence in the Complaint, but their factual allegations must at least move beyond a general and conclusory nature to survive Rule 12(b)(6). Pls.' Resp. at 11. As alleged, the facts regarding Vanguard's

15

communications with Kim are merely conclusory of the law and do not transform possible breach of fiduciary duty and equitable estoppel claims into plausible ones. *See Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted). However, to give Plaintiffs an opportunity to provide more detailed facts, this Court grants Plaintiffs' request to amend Counts Seven and Eight.

### IV. CONCULSION

For the forgoing reasons, Counts One, Two, Three, and Six are dismissed with prejudice. Counts Four and Five survive a motion to dismiss. Plaintiffs' motion to amend is granted with respect to Counts Seven and Eight.

BY THE COURT:

_____
THE HONORABLE KAI N. SCOTT
U.S. DISTRICT COURT JUDGE